UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 12-21762-CIV-ALTONAGA/SIMONTON

**CHANEL, INC.**,

   Plaintiff,

     v.

**CHANEL255.ORG**, *et al*,

   Defendants.

_____/

**ORDER GRANTING PLAINTIFF'S
APPLICATION FOR PRELIMINARY INJUNCTION**

**THIS CAUSE** came before the Court at a May 29, 2012 hearing [ECF No. 8] on Plaintiff, Chanel, Inc.'s ("Chanel['s]") *Ex Parte* Application for Entry of Preliminary Injunction (the "Application for Preliminary Injunction") [ECF No. 5], filed May 16, 2012. The Application for Preliminary Injunction asks the Court to issue a preliminary injunction against the partnership or unincorporated association and various unknown associates who operate the websites that infringe Chanel's trademarks and that promote and sell counterfeit Chanel goods. Among other things, Chanel asks that the Court enjoin Defendants from producing or selling goods which infringe its trademarks, and that the Court seize control of the domain names of the infringing websites and redirect the web traffic searching for those domains to another site that displays a copy of the pleadings from this case.

The Court convened the hearing on May 29, 2012, at which only counsel for Plaintiff was present and available to present evidence supporting the Application for Preliminary Injunction. Defendants received notice of the Complaint [ECF No. 1], the hearing, and the Court's Order [ECF No. 6] granting Plaintiff's motion for a temporary restraining order. (*See* [ECF Nos. 9, 10,

11, 12]). Defendants have not responded to the Application for Preliminary Injunction, nor made any filing in this case, nor have Defendants appeared in this matter either individually or through counsel. The Court has carefully considered the Application for Preliminary Injunction and pertinent portions of the record.

**I. INTRODUCTION**

Plaintiff, Chanel, is suing the Partnerships and Unincorporated Associations Identified on Schedule A attached to Plaintiff's Complaint and Does 1–1,000 (collectively "Defendants") and their various unknown associates for trademark counterfeiting and infringement; false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); cyberpiracy under 15 U.S.C. §1125(d), and common law unfair competition. Chanel's Complaint alleges Defendants are promoting, advertising, distributing, offering for sale and selling counterfeit and infringing Chanel branded products within the Southern District of Florida through fully interactive commercial Internet websites operating under certain domain names (the "Subject Domain Names").[1]

Chanel alleges Defendants' unlawful activities have caused and will continue to cause irreparable injury to Chanel because Defendants have (1) deprived Chanel of its right to determine the manner in which Chanel's trademarks are presented to the public through merchandising; (2) defrauded the public into thinking Defendants' goods are authorized Chanel goods; (3) deceived the public as to Chanel's association with Defendants' goods and the websites which market and sell the goods; and (4) wrongfully traded and capitalized on Chanel's reputation and goodwill as well as the commercial value of Chanel's trademarks.

---

[1] The Subject Domain Names are (1) chanel255.org, (2) chanel-replica.us, (3) fakechanel.us, (4) knockoffs-handbags.com, (5) replicacocochanel.com, (6) replica-designer-handbags.org, (7) replicaheels.com, and (8) replicashandbags.us. (*See* Schedule A to Chanel's Application for Preliminary Injunction [ECF No. 5]).

In the Application for Preliminary Injunction, Chanel moves for the issuance of a preliminary injunction against Defendants, pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65, for alleged violations of the Lanham Act.

## II. FACTUAL BACKGROUND[2]

Chanel is a corporation duly organized under the laws of the State of New York with its principal place of business in the United States located at Nine West 57th Street, New York, New York 10019. (*See* Compl. ¶ 2). Chanel manufactures, promotes, distributes, and sells in interstate commerce, including within this Judicial District, high quality products under a number of Chanel's trademarks. (*See* Declaration of Adrienne Hahn Sisbarro in Support of Plaintiff's *Ex Parte* Application for TRO ("Hahn Decl.") ¶¶ 4, 5.)

Chanel owns and has owned at all relevant times all rights in and to the following Federally registered trademarks (the "Chanel Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| CHANEL | 0,626,035 | May 1, 1956 | IC 018 – Women's Handbags |
| ⟲C | 1,314,511 | January 15, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,347,677 | July 9, 1985 | IC 018 - Leather Goods-namely, Handbags |
| CHANEL | 1,733,051 | November 17, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business and Credit Card Cases, Change Purses, Tote Bags, Cosmetic Bags Sold Empty, and |

---

[2] The factual background is taken from the Complaint, the *Ex Parte* Application for TRO, and supporting Declarations submitted by Chanel.

|  |  |  | Garment Bags for Travel |
|---|---|---|---|
| ℂℂ | 1,734,822 | November 24, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business Card Cases, Change Purses, Tote Bags, and Cosmetic Bags Sold Empty |
| ℂ | 3,025,934 | December 13, 2005 | IC 018 – Handbags |

The Chanel Marks are used in connection with the manufacture and distribution of high quality goods in at least the categories identified above. (*See* Hahn Decl.) ¶ 5; *see also* Chanel Trademark Registrations attached as Composite Exhibit A to the Hahn Decl).

Chanel hired Eric Rosaler ("Rosaler") of AED Investigations, Inc. to investigate suspected sales of counterfeit Chanel branded products by Defendants. (*See* Hahn Decl. ¶ 10; Rosaler Decl. ¶ 3.) In May 2012, Rosaler accessed two (2) of the websites operating under the Subject Domain Names chanel-replica.us and fakechanel.us and finalized the purchases of a wallet and a handbag, respectively — each bearing counterfeits of at least one of the Chanel Marks at issue in this action. (*See* Rosaler Decl. ¶ 4; Rosaler Decl. Ex. A). Both of Rosaler's purchases were processed entirely online. (*See* Rosaler Decl. at ¶ 4.)

Chanel then asked Adrienne Hahn Sisbarro, its representative who is familiar with genuine Chanel goods and trained to detect counterfeits, to review and visually inspect the chanel-replica.us and fakechanel.us web page listings, as well as detailed web page captures of the Chanel branded wallet and Chanel branded handbag purchased by Rosaler. (*See* Hahn Decl. ¶¶ 3, 11). Hahn determined the items were not genuine, unauthorized Chanel products. (*See* Hahn Decl. ¶¶ 3, 12, 15). Additionally, Hahn reviewed and visually inspected the items bearing

the Chanel Marks offered for sale on the Internet websites operating under all of the Subject Domain Names and determined the products were not genuine Chanel products. (*See id.* ¶¶ 13-15.)

Based on the investigations, Chanel alleges Defendants have advertised, offered for sale, and/or sold handbags and wallets, bearing counterfeits, reproductions, and/or colorable imitations of the Chanel Marks. (*See* Hahn Decl. ¶¶ 10-15; Rosaler Decl. ¶ 4). Defendants are not now, nor have they ever been authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of the Chanel Marks. (*See* Hahn Decl. ¶ 9).

### III. LEGAL STANDARD

Chanel has filed claims pursuant to 15 U.S.C. §§ 1114(1)(a), 1125(a), and 1125(d). Title 15 U.S.C. section 1116(a) provides the Court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116. Injunctive relief is also available under section 1116(a) for a violation of section 1114(1)(a). *See* 15 U.S.C. § 1116(d)(1)(A).

In order to obtain a preliminary injunction, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non- movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F. 3d 982, 985 (11th Cir. 1995).

.

With respect to scope, generally, "persons who are not actual parties to the action or in privity with any of them may not be brought within the effect of a[n injunctive] decree merely by naming them in the order." 11C WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2956 at 335–36 (2d ed. 1995) (footnote omitted). However, "a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 180 (1973) (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)); *see also* Fed. R. Civ. P. 65(d)(2). Specifically relevant to this case, 15 U.S.C. section 1114(2)(D) implicitly provides the Court with authority to request or order "[a] domain name registrar, domain name registry, or other domain name registration authority . . . [to] deposit[]with a court, in which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name." 15 U.S.C. §§ 1114(2)(D)(i)–(ii).

### IV. ANALYSIS

A.  **Probability of Success on the Merits**

    1.  **Counterfeiting and Infringement – 15 U.S.C. § 1114**

Section 32 of The Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." To prevail on its trademark infringement claim, Chanel must demonstrate "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion,*

*Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997) (internal citation omitted)).

To evaluate likelihood of consumer confusion in a Lanham Act trademark claim, the Eleventh Circuit has developed a seven factor balancing test. *See Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989). The seven factors are: "(1) type [or strength] of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (3) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion." *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1313 (11th Cir. 2001); *see also Dieter*, 880 F.2d at 326; *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1164 (11th Cir. 1982). No single factor is dispositive. *Lipscher*, 266 F.3d at 1313.

The Court has considered these seven factors in light of the submissions provided by Chanel and concludes the balance of factors indicates there is a likelihood consumers would confuse Defendants' websites and products with the genuine Chanel versions. In particular, the submissions provided by Chanel support the strength of the Chanel Marks, show that the goods produced and sold by Defendants are nearly identical to genuine Chanel products, indicate that both Chanel and Defendants target the same U.S. customers on the Internet, suggest that Defendants intended to benefit from the use of Chanel's brand reputation, and show that consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for real Chanel products. Accordingly, Chanel has shown a probability of success on the merits of its trademark counterfeiting and infringement claim under section 1114.

2. **False Designation of Origin – 15 U.S.C. § 1125(a)**

The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim — i.e., whether the public is likely to

be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). As just discussed in relation to Chanel's trademark counterfeiting and infringement claims, Defendants' goods are likely to be confused by consumers for genuine Chanel products. Therefore, Chanel has shown a likelihood of success on Chanel's claim of false designation of origin.

### 3. Cyberpiracy Claim – 15 U.S.C. § 1125(d)

The Anticybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name which is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. *See* 15 U.S.C. § 1125(d). "To prevail under the ACPA, a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)).

As to the first element, the Chanel Marks are inherently distinctive because they are arbitrary as applied to the products which they identify — i.e., they "do[] not suggest or describe the goods or services offered thereunder." *Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1349 (S.D. Fla. 2001) (citing *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335–36 (11th Cir. 1999)). Moreover, the Chanel Marks are indisputably famous because they enjoy widespread recognition by consumers. Regarding the second element — use of confusingly similar domain names — Chanel has supplied a list of domain names allegedly used by Defendants to sell counterfeit Chanel products. The confusingly

similar Subject Domain Names are chanel255.org, chanel-replica.us, fakechanel.us, and replicacocochanel.com.[3] Chanel has provided sufficient evidence in its submissions to support the conclusion that these domain names are confusingly similar to at least some Chanel Marks. With regard to the third element — whether Defendants registered the domain names with the bad faith intent to profit — the Court has considered the nine factors laid out in 15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IX) and concludes the submissions provided by Chanel adequately demonstrate Defendants registered the Subject Domain Names in bad faith to attract customers using the Chanel Marks to sell them counterfeit Chanel products. Consequently, Chanel has shown a likelihood of success on the merits of its section 1125(d) claim.

**B.     Irreparable Injury**

The Eleventh Circuit has acknowledged that "once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim,"[4] there is a "presumption of irreparable harm." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008); *see also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998). However, the strength of this presumption has been called into question by the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). *See N. Am. Medical Corp.*, 522 F.3d at 1228. After *eBay*, a court may grant preliminary injunctive relief "without the benefit of a presumption of irreparable injury," or may "decide that the particular circumstances of the

---

[3] The Court may seize control of the remaining Subject Domain Names which do not themselves contain any Chanel Marks because the websites associated with those domain names allegedly promote and offer for sale goods which infringe the Chanel Marks in violation of sections 1114 and 1125(a). *See Tiffany (NJ), LLC v. Zheng*, 11-60171-Civ-Altonaga, at 9 (S.D. Fla. Feb. 1, 2011) [ECF No. 13].

[4] As discussed in the legal standard section *supra*, injunctive relief is available on each of Chanel's three claims, not only the trademark infringement claim. 15 U.S.C. § 1116(a).

instant case bear substantial parallels to previous cases such that a presumption of irreparable injury is an appropriate exercise of its discretion in light of the historical traditions." *Id.*

As already discussed, based on Chanel's submissions to this point, there is a substantial likelihood that consumers will incorrectly believe Defendants' websites and products are approved or sponsored by Chanel. Although the Court may be permitted to presume irreparable harm from the likely consumer confusion in this case, it is not necessary to rely on a presumption. The operation of Defendants' websites displaying the Chanel Marks and the sale of Defendant's inferior goods to consumers is likely to cause irreparable damage to Chanel's reputation if it continues because Chanel will not have the ability to control the quality of what appears to be its products in the marketplace. This damage to Chanel's reputation and goodwill could not be easily quantified nor could it be undone through an award of money damages. *See Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008).

**C.     The Balance of Hardships**

The Court is satisfied after reviewing Chanel's submissions that the risk to the reputation and goodwill associated with the Chanel Marks should Defendants' infringing activities continue outweighs any hardship to Defendants caused by enjoining those activities. It does not appear that Defendants will suffer any legitimate hardship if a preliminary injuis issued because they have no legal right to use the Chanel Marks on their websites or to sell counterfeit Chanel products.

**D.     Public Interest**

The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. *See Nike, Inc. v. Leslie*, 227 U.S.P.Q. 574, 575 (1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such

behavior."); *Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.*, 41 U.S.P.Q.2d 1995, 1999 (1997) (citing *Scarves By Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167 (2d Cir. 1976)) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief."). Here, Chanel has demonstrated that Defendants' websites and products mislead consumers into believing they are approved or sponsored by Chanel and make it more difficult for a consumer to be sure he or she is purchasing a genuine Chanel product.

## V. CONCLUSION

Based on Plaintiff's Complaint, Application for Preliminary Injunction, and evidentiary submissions, the undersigned concludes that the four-part test for injunctive relief has been satisfied. Moreover, because providing notice of this suit before granting injunctive relief would allow Defendants to funnel traffic to their current websites to new domains and allow Defendants to continue selling counterfeit products, a preliminary injunction should issue. Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiff's Application for Preliminary Injunction **[ECF No. 5]** is **GRANTED** as follows:

1. Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants having notice of this Order are hereby restrained and enjoined:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Chanel Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

  b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the Chanel Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Chanel Marks, or any confusingly similar trademarks.

2. Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants having notice of this Order shall, until the conclusion of this proceeding, discontinue the use of the Chanel Marks or any confusingly similar trademarks, on or in connection with all Internet websites owned and operated, or controlled by them including the Internet websites operating under the Subject Domain Names;

3. Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants having notice of this Order shall, until the conclusion of this proceeding, discontinue the use of the Chanel Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, or operated by Defendants, including the Internet websites operating under the Subject Domain Names;

4. Defendants shall not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court;

5. The domain name Registrars for the Subject Domain Names are directed, to the extent not already done, to transfer to Plaintiff's counsel, for deposit with this Court, domain name certificates for the Subject Domain Names;

6. Upon Plaintiff's request, the privacy protection service for any Subject Domain Names for which the Registrant uses such privacy protection service to conceal the Registrant's identity and contact information are ordered to disclose, to the extent not already done, to Plaintiff the true identities and contact information of those Registrants;

7. The Registrars shall, to the extent not already done, assist in changing the registrar of record for the Subject Domain Names, excepting any such domain names which such registrars have been notified in writing by the Plaintiff have been or will be dismissed from this action, to a holding account with a registrar of Plaintiff's choosing (the "New Registrar"). To the extent the registrars do not assist in changing the registrars of record for the domains under their respective control within one (1) business day of receipt of this Order and instructions on the change of the registrars of record, the top-level domain (TLD) registries (or their administrators) for the Subject Domain Names, within five (5) business days of receipt of this Order, shall update the registrars of record for the Subject Domain Names, excepting any such domain names which such registries have been notified in writing by the Plaintiff have been or will be dismissed from this action, to the New Registrar. As a matter of law, this Order shall no longer apply to any Defendant or associated domain name dismissed from this action. Upon the change of the registrar of record for the Subject Domain Names, the New Registrar will maintain access to the

Subject Domain Names in trust for the Court during the pendency of this action. Additionally, the New Registrar shall immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") http://servingnotice.com/255/index.html whereon copies of the Complaint and all other documents on file in this action are displayed. Alternatively, the New Registrar may update, and/or continue to update, the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which link the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where copies of the Complaint, this Order, and all other documents on file in this action are displayed. After the New Registrar has effected this change the Subject Domain Names shall be placed on Lock status, preventing the modification or deletion of the domains by the registrar or Defendants;

8. Plaintiff may enter, and/or continue to enter, the Subject Domain Names into Google's Webmaster Tools and cancel any redirection of the domains that have been entered there by Defendants which redirect traffic to the counterfeit operations to a new domain name and thereby evade the provisions of this Order;

9. Defendants shall preserve, and/or continue to preserve, copies of all their computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order;

10. This Order shall apply to the Subject Domain Names and any other domain names properly brought to the Court's attention and verified by sworn affidavit which verifies such new domain names are being used by Defendants for the purpose of counterfeiting the Chanel Marks at issue in this action and/or unfairly competing with Chanel in connection with search engine results pages;

11. Plaintiff shall maintain its bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court; and

12. This Preliminary Injunction shall remain in effect during the pendency of this action, or until such further date as set by the Court or stipulated to by the parties.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29h day of May, 2012.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record